IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFF COOMES, BRIAN MITCHELL, | ) Case No. 21-CV-67-TCK-CDL |
| SEAN MCLEOD, TERRY FRANKLIN | ) |
| And CAREATC, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court are the Motion to Dismiss filed by defendant Brian Mitchell and the Motion to Dismiss filed by defendants Sean McLeod and Terry Franklin. Docs. 9, 10. Both motions seek dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* Plaintiff has not responded to the motions.

**I. Applicable Law**

Fed.R.Civ. P.12(b)(1) permits the Court to dismiss a complaint for "lack of subject- matter jurisdiction." "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 906 F.3d 926, 931 (10th Cir. 2018). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." (citation omitted). Here, defendants have facially attacked the sufficiency of the Complaint's allegations as to the existence of subject matter jurisdiction. In addressing a facial attack under Rule 12(b)(1), the court must "presume all of the allegations contained in the

amended complaint to be true." *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002). Dismissal is proper where "the complaint fails to allege any basis for subject matter jurisdiction over the claims raised therein." *Harrison v. United States,* 329 Fed. Appx. 179, 181 (10th Cir. 2009) (unpublished).

Fed. R. Civ. P. 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he Rule 8 pleading standard does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.*

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Id.* at 556. Allegations in a complaint must be sufficient to show that a plaintiff plausibly, (not just speculatively) has a claim for relief. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

**II. Allegations of the Complaint**

CAREATC, INC. ("CAREATC") is a healthcare service provider specializing in on-site health clinics, personal health assessments and wellness programs. Doc. 2, ¶13. Plaintiff is a Registered Phlebotomist who began working for CAREATC in May of 2018. *Id.*, ¶14. She was one of approximately 11 employees at CAREATC's Tulsa location who performs health assessments sometimes requiring travel. *Id.*, ¶15. Her department is known as the PHA

department. *Id.* When PHA employees ae required to travel to perform an assignment, they travel with department Leads assigned to their specific job. *Id.*, ¶16.

Jeff Coomes ("Coomes") was the lead with whom Plaintiff was frequently assigned to travel. *Id.*, ¶17. Coomes pursued Plaintiff for months at the start of her employment trying to get Plaintiff to date him. *Id.*, ¶18. Eventually, Plaintiff entered into an on again off again relationship. *Id.*, ¶19. Coomes was Plaintiff's supervisor during their relationship. *Id.*, ¶20.

During the course of their relationship, Coomes persuaded Plaintiff to send him intimate photographs of herself, which he in turn showed to Plaintiff's co-worker Sean McLeod ("McLeod") and another Lead, Terry Franklin ("Franklin"). *Id.*, ¶21. Coomes also showed Plaintiff intimate photographs of other employees at CAREATC, including Brian Mitchell ("Mitchell"), McLeod and Franklin, and spread the rumor that she was easy. *Id.*, ¶22. One of her supervisors, Brian Mitchell, solicited Plaintiff for sex, asking her to help him "whack one off: on a work trip." *Id.*, ¶23. When she refused, he stated that at least there was plenty of lotion back in his hotel room. *Id.*, ¶23.

Coomes became angry and possessive of Plaintiff and cheated on her with other co-workers. *Id.*, ¶24. After Plaintiff ended her relationship with Coomes, he continued to harass her via Facebook and telephone messages. *Id.*, ¶25. Plaintiff filed a complaint with Kim Butler ("Butler"), CAREATC's HR Administrator, regarding Coomes' behavior. *Id.*, ¶26. Butler assured Plaintiff that Sundae Smith ("Smith"), the PHA Supervisor, would speak with Coomes about his behavior. *Id.*, ¶27. Smith never spoke with Coomes about his behavior, but instead led Plaintiff to believe that she would be promoted to Lead once she passed a computer proficiency test. *Id.*, ¶28.

Plaintiff passed the test and then was told CAREATC would not be hiring any new leads. *Id.*, ¶29. CAREATC then promoted two of Plaintiff's co-workers who had not been with the company as long as Plaintiff to Lead positions. *Id.*, ¶30.

CAREATC continued to assign Coomes as the Lead to Plaintiff's job assignments, and she was continually forced to work and travel with him. *Id.*, ¶31. Coomes continued to harass Plaintiff via social media and became aggressive and threatening, telling her not to report his behavior again. *Id.*, ¶32. He physically assaulted Plaintiff at work, tightly grabbing her arm and yelling in her face until he made her cry. *Id.*, ¶33. Coomes repeatedly grabbed Plaintiff and pulled her to him for hugs despite her express objections. *Id.*, ¶34.

Plaintiff again reported Coomes' behavior to PHA Supervisor Sundae Smith, who informed Plaintiff that she would just have to understand that Smith and others at CAREATC had simply known Coomes longer than they had know Plaintiff. *Id.*, ¶35. After receiving Plaintiff's EEOC complaint, CAREATC sent out a survey designed to trick Plaintiff into making a positive comment about the company in order to undermine her complaint. *Id.*, ¶36. Instead, Plaintiff answered the survey, "stop sexual harassment." *Id.*

On January 8, 2021, Plaintiff requested information to apply for CAREATC's Short Term Disability benefits because she needed to have surgery. *Id.*, ¶37. Instead of giving her the information she needed to apply for short term disability benefits, CAREATC fired her the next business day, January 11. *Id.*, ¶38.

Plaintiff asserts federal and state claims against CAREATC for:

1. sex discrimination in violation of Title VII and 25 O.S. § 1301, et seq.;
2. hostile work environment;
3. retaliation in violation of Title VII;

    4. disability discrimination.

She asserts the following claims against the individual defendants:

    5. intentional infliction of emotional distress by supervisor against Brian Mitchell;

    6. assault and battery against Jeff Coomes;

    7. invasion of privacy by receiving and reviewing the photographs of Plaintiff shown by Coomes with prurient interest and without prior authorization from Plaintiff, in violation of 21 O.S. §1040.13(b), against Mitchell, McLeod and Franklin.

Plaintiff seeks compensatory damages for economic damages, emotional distress, pain and suffering and other non-pecuniary losses; punitive damages; attorney fees and costs and expenses of the action; and equitable relief. *Id.*, p. 11.

### III. Analysis

#### A. McLeod and Franklin's Motion to Dismiss

Plaintiff's sole claim against McLeod and Franklin (Claim 7) is for alleged violation of 21 O.S. §1040.13(b). That statute provides, in pertinent part:

> B. A person commits nonconsensual dissemination of private sexual images when he or she:
>
> 1. Intentionally disseminates an image of another person:
>
>    a. who is at least eighteen (18) years of age,
>
>    b. who is identifiable from the image itself or information displayed in connection with the image, and
>
>    c. who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part;
>
> 2. Disseminates the image with the intent to harass, intimidate or coerce the person, or under circumstances in which a reasonable person would know or understand that the image would harass, intimidate or coerce the person;
>
> 3. Obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

    4. Knows or a reasonable person should have known that the person in the image has not consented to the dissemination.

*Id.* Here, Plaintiff's Complaint fails to include allegations meeting the first or second required elements, *i.e.*, that either McLeod or Franklin disseminated any images of her, or that they acted with any intent to harass, intimidate or coerce Plaintiff.[1]

Accordingly, McLeod's and Franklin's Motion to Dismiss must be granted.

### B. Mitchell's Motion to Dismiss

Plaintiff asserts claims against Mitchell for intentional infliction of emotional distress by supervisor and invasion of privacy. Doc. 2, Claims 5, 7.

### 1. Intentional Infliction of Emotional Distress

To state a viable claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). "While emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea, it is only where the emotional distress is extreme that liability arises. *Id.* at 736.

As the Oklahoma Supreme Court has stated, "The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind . . . . Not every abusive outburst or offensive verbal encounter

---

[1] Black's Law Dictionary defines "dissemination" as "the act of spearing, diffusing, or dispersing." *Dissemination*, Black's Law Dictionary (10th ed. 2014).

may be converted into a tort." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986). "Conduct which, though, unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community,' falls short of having actionable quality." *Id.* In order to prevail, the plaintiff must establish that the defendant's conduct may reasonably be regarded as "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P.2d 574, 576 (Okla. 1996) (quoting *Breeden v. League Services Corp.*, 575 P.2d 1374, 1378 (Okla. 1978).

The Complaint alleges that Mitchell's "conduct from his position as supervisor soliciting sex" from Plaintiff was "outrageous and beyond all bounds of decency," and that she "has suffered damages [and] emotional distress" from his actions. Doc. 2, ¶¶ 62. However, the Complaint fails to state anywhere that Mitchell acted with the necessary intent or recklessness to cause Plaintiff emotional distress, nor does it allege with any particularity that she in fact, suffered severe emotional distress. *Id.*

Accordingly, the Court concludes that the Complaint fails to state a viable claim against Mitchell for intentional infliction of emotional distress.

### 2. Violation of 21 O.S. §1040.13b

Oklahoma law criminalizes the intentional dissemination of private sexual images when an individual:

1. Intentionally disseminates an image of another person who is:

    a. at least 18 years of age,

    b. identifiable from the image itself or information displayed in connection with the image, and

7

      c.   engaged in a sexual act or whose intimate parts are exposed, in whole or part.

2.     Disseminates the image with the intent to harass, intimidate or coerce the person, or under circumstances in which a reasonable person would know or understand that dissemination of the image would harass, intimidate or coerce the person;

3.     Obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

4.     Knows or a reasonable person should have known that the person in the image has not consented to the dissemination.

2a O.S. §1010.13b. Because the statute is conjunctive, all elements are required to state a claim for intentional dissemination of private sexual images. *Id.*

The Complaint in this case alleges only that Mitchell received and viewed the photographs. It does not allege that he took any actions to spread or disburse the images at all, much less that he disseminated the images with an intent to harass, intimidate or coerce the Plaintiff.

Accordingly, Mitchell's motion for dismissal of Plaintiff's 2a O.S. §1010.13b claim must be granted.

### IV. Conclusion

For the reasons stated above, the Motions to Dismiss filed by defendants Brian Mitchell, Sean McLeod and Terry Franklin (Docs. 9, 10) are hereby granted.

ENTERED this 21st day of September, 2021.

_____
TERENCE C. KERN
United States District Judge